KRAVITCH, Circuit Judge,
concurring in part and dissenting in part:
I concur in parts A, B, and C of the majority opinion’s discussion section. I respectfully dissent, however, from the majority’s conclusion in parts D and E that Andrew Meeks was entitled to qualified and state-agent immunity.
Determining whether Meeks is entitled to immunity is a fact-intensive inquiry. Because this is an interlocutory appeal from an order on the defendants’ motion for summary judgment, my dissent relies on the version of these facts that is most favorable to the Griders.
First, the record contains evidence that Meeks calculated the square-footage standard for standing space in Skybar differently than for the two comparator establishments. Although the majority opinion correctly states that other inspectors made the on-site calculations for the comparator establishments (In Italy and 1716), Meeks admitted in his deposition testimony to ultimately approving a five-square-feet-per-person standard for standing space in the two comparator establishments.[1] *1270 Meeks also admitted that he assigned a higher seven-square-feet-per-person standard to “standing space” in Skybar, even though the IBC(2003) assigns a five-square-feet-per-person standard to standing space. See IBC § 1004 tbl.1004.1.2.
Meeks explained in an August 7, 2006 letter to the Griders that he derived the higher seven-square-feet-per-person standard for Skybar’s standing space from the 1997 Standard Building Code (SBC).[2] Meeks stated that he used the SBC’s higher standard because Skybar’s exits and fire-suppression systems were not up to the standards of the IBC(2003). He later explained that four out of the five ground-floor exits “were worse than any stair quotient in any published code” and that the fire alarm installed by the Griders could only accommodate 1,000 people. Meeks also testified that § 104.10 of the IBC(2003) authorized him to apply the SBC’s standards to Skybar. Finally, he claimed that the IBC(2003) gave him the ultimate discretion to make determinations in the interests of public safety.
The Griders identify several problems with Meeks’s explanations. First, they argue that under the IBC(2003), Skybar’s exit capacity has no effect on the square-footage standard for standing space. They point out that § 1005.1 of the IBC(2003) requires the building inspector to factor in exit capacity only when calculating an alternative maximum occupancy figure based on the “minimum required egress width.” See IBC § 1005.1. If this alternative number is lower than the maximum occupancy based on a square-footage standard, the IBC(2003) requires the building inspector to calculate the maximum occupancy for the structure based on this “egress-width” number. In this case, it is undisputed that Meeks did not use this number to calculate Skybar’s maximum occupancy.
Second, the Griders argue that Skybar’s fire-suppression systems were up to code because Skybar was an existing building that was “grandfathered in” under § 3401.1 of the IBC(2003) and because they had added a fire alarm and sprinkler system. They also argue that the IBC(2003) only required a fire alarm for the front portion of Skybar because only that section had been recently altered. See IBC § 3401.1. They thus conclude that the building code only properly limited the front portion of Skybar to 1,000 people.
On these facts, construed in the Griders’s favor, Andrew Meeks both violated clearly established federal law and acted beyond his authority. Accordingly, I respectfully dissent from the majority opinion and submit that Meeks is not entitled to either qualified or state-agent immunity.

A. Qualified Immunity

The majority concludes that Meeks was entitled to qualified immunity because the Griders failed to state a valid class-of-one equal-protection claim. See Vill. of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). In particular, the majority concludes that the Griders did not establish that Skybar and its two comparator establishments — In Italy and 1716 — are “prima facie identical in all relevant aspects.” Griffin Indus. v. Irvin, 496 F.3d 1189, 1203-04 (11th Cir.2007). The majority, however, fails to limit its analysis to evidence relevant to whether Skybar was similarly situated to the two comparator establishments for the purposes of assigning a square-footage standard to standing space. In particular, the *1271 majority faults the Griders for failing to provide information about (1) the emergency exits and fire-suppression systems in In Italy or 1716; (2) the layout of the exterior or interior of Skybar, In Italy, or 1716; and (3) the square footage of In Italy or 1716.
Most of this information, however, is irrelevant to determining the square-footage standard for standing space. First, the IBC(2003) does not state that the overall size of a facility is relevant to the square-footage standard to be applied to a building’s standing space. Second, the exact layout of the exterior or interior of Skybar is not relevant because it is undisputed that Meeks applied a different standard to Skybar’s standing space than he did to the same kind of standing space in the two comparator establishments. Finally, table 1004.1.2 of the IBC(2003) explicitly states that the building inspector should assign a five-square-feet-per-person standard to standing space; exit capacity is only relevant to the alternative maximum-occupancy load based on “egress width” that ultimately did not control Meeks’s calculations.
The only arguably relevant factor cited by the majority is whether Skybar’s fire-suppression systems are similar to those of the two comparators. It is undisputed that the fire-suppression systems of the two comparator establishments were up to code. The Griders, however, cited the IBC(2003) to assert that their installation of a fire alarm and sprinkler system in Skybar brought Skybar’s fire-prevention systems up to code and that the fire alarm only limited the front part of Skybar to 1,000 people. Meeks did not dispute these assertions. Thus, the Griders have provided enough information at this stage in the litigation to establish that Skybar’s fire-suppression systems were similar to those of the two comparator establishments.
The Griders have otherwise produced evidence that all three businesses have the same zoning classification, have areas of standing space, are “existing buildings,” and were assigned maximum-occupancy loads by Meeks while the IBC(2003) was in effect. These facts are enough to convince a reasonable juror that Skybar warranted similar treatment to In Italy and 1716 for the purposes of assigning a square-footage standard to standing space.
The majority also concludes that Meeks had a rational basis for treating Skybar differently from its two similarly situated comparators. See Oleeh, 528 U.S. at 564, 120 S.Ct. 1073. The majority accepts two purportedly rational bases for Meeks’s calculations: (1) Skybar’s poor exit capacity, and (2) Skybar’s fire-suppression system. The first of these is not persuasive because a reasonable juror could conclude that exit capacity does not have any bearing on the square-footage standard for standing space. The second reason is similarly unavailing because Meeks did not dispute that the installation of the fire alarm and sprinkler brought Skybar’s fire-prevention systems up to code.
Finally, to avoid qualified immunity, the Griders must establish that Meeks’s allegedly discriminatory calculations violated clearly established law. See Vinyard v. Wilson, 311 F.3d 1340, 1351-52 (11th Cir.2002). On this point, “the salient question ... is whether the state of the law ... gave [the officers] fair warning that their alleged treatment of [the plaintiff] was unconstitutional.” Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). The Supreme Court has held that under the Equal Protection Clause, “a person has a right to be free from intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.” Olech, 528 U.S. at *1272 564, 120 S.Ct. 1073. Here, Meeks had fair warning that the allegedly discriminatory application of Auburn’s uniform building regulations would violate the Equal Protection Clause, and he should not have been granted qualified immunity.

B. State-Agent Immunity

The majority also concludes that Meeks is entitled to state-agent immunity because his occupancy calculations were discretionary and the Griders did not allege facts sufficient to establish that his actions were “willfully wrong, malicious, in bad faith, beyond his authority, or ... made under a mistaken interpretation of law.” Ex Parte Cranman, 792 So.2d 392, 405 (Ala.2000). I believe, however, that the Griders have provided enough evidence to establish that Meeks acted beyond his authority in determining the square-footage standard for Skybar.
“A State agent acts beyond [his] authority and is therefore not immune when he or she ‘fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.’ ” Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala.2003) (quoting Ex parte Butts, 775 So.2d 173, 178 (Ala.2000)). It is undisputed that all of the calculations of Skybar’s maximum occupancy in 2005 and 2006 were governed by the IBC(2003). Meeks, however, admits to employing the SBC to calculate the maximum occupancy number for Skybar’s standing space. In his deposition, Meeks claimed that he departed from the IBC(2003) because Skybar was not up to code. But, as explained above, there is evidence suggesting that Skybar was not in violation of the IBC(2003) and that its exit capacity should not have affected the square-footage standard. Thus, under the version of the facts most favorable to the Griders, there was no relevant safety reason for Meeks to depart from the IBC(2003) when calculating Skybar’s square-footage standard.
Furthermore, even if Skybar had not been up to code, nothing in the record suggests that Meeks had the discretion to completely ignore the IBC(2003) and select a square-footage standard from the SBC. Meeks initially testified that he. was authorized to depart from the IBC(2003) under § 104.10. But this section would only have mattered if the Griders had petitioned for a modification. See IBC § 104.10 (allowing for modifications “upon application of the owner or the owner’s representative”). Furthermore, although the IBC(2003)’s “purpose” is to safeguard the “public health, safety and general welfare,” see id. § 101.3, it does not allow a building inspector to completely ignore its provisions. In fact, although § 104.1 of the IBC(2003) affords building officials the authority to render “interpretations” of the IBC(2003) and to adopt “policies and procedures,” it specifically states that those policies and procedures “shall not have the effect of waiving requirements specifically provided for in this code.” Id. Construed in the Griders’s favor, this provision suggests that Meeks exceeded his authority when he chose a square-footage standard from the SBC.
Thus, in my view, the Griders have alleged sufficient evidence to show that Meeks acted outside of his authority, and he is therefore not entitled to state-agent immunity.

. Meeks stated that he made the decision to use a five-square-feet-per-person standard for the "concentrated areas” in the comparator establishments. Meeks later clarified that his discussion of the application of the five-square-feet-per-person standard to concentrated areas "that [he had] been talking about” corresponded to “the standing space for the concentrated areas.”

. The Standard Building Code was in effect in Auburn until the City adopted the IBC(2003) in late 2003.